## BEFORE THE UNITED STATES JUDICIAL PANEL

## ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re Crop Protection Products Loyalty Program Antitrust Litigation | MDL NO. 3062 |

### DEFENDANTS' JOINT MEMORANDUM OF LAW IN RESPONSE TO MOTION TO TRANSFER FOR COORDINATED OR CONSOLIDATED PROCEEDINGS

December 19, 2022

Table of Contents

Page

Table of Authorities ..................................................................................................... ii

Preliminary Statement ...................................................................................................1

Statement of Facts ..........................................................................................................2

Standard of Decision ......................................................................................................5

Argument .........................................................................................................................5

I.      THE PENDING ACTIONS ALL INVOLVE ONE OR MORE COMMON
        QUESTIONS OF FACT THAT REQUIRE COORDINATION........................................5

II.     NORTH CAROLINA IS THE ONLY FORUM IN WHICH ALL CASES CAN
        BE COORDINATED .........................................................................................7

III.    EVEN IF NORTH CAROLINA WERE NOT THE ONLY PLACE WHERE ALL
        CASES CAN BE COORDINATED, IT IS THE FORUM BEST SUITED FOR
        THESE CASES ...............................................................................................10

Conclusion .....................................................................................................................15

## Table of Authorities

**Page(s)**

**Cases**

*Ellis v. T-H Pro. & Med. Collections, Ltd.*,
No. 1:20-CV-00828-JMS-TAB, 2020 WL 4673258 (S.D. Ind. Aug, 12, 2020) ...................12

*ExpressJet Airlines, Inc. v. RBC Cap. Markets Corp.*,
No. H-09-992, 2009 WL 2244468 (S.D. Tex. July 27, 2009) ..................................................9

*In re 100% Grated Parmesan Cheese Mktg. & Sales Pracs. Litig.*,
201 F. Supp. 3d 1375 (J.P.M.L. 2016) .....................................................................................6

*In re Ace Ltd. Sec. Litig.*,
370 F. Supp. 2d 1353 (J.P.M.L. 2005) ......................................................................................7

*In re Ampicillin Antitrust Litig.*,
315 F. Supp. 317 (J.P.M.L. 1970) .............................................................................................7

*In re: Chocolate Confectionary Antitrust Litig.*,
542 F. Supp. 2d 1376 (J.P.M.L. 2008) ...................................................................................14

*In re Citigroup, Inc., Auction Rate Sec. (ARS) Mktg. Litig. (No. II)*,
626 F. Supp. 2d 1329 (J.P.M.L. 2009) ......................................................................................9

*In re Cuisinart Food Processor Antitrust Litig.*,
506 F. Supp. 651 (J.P.M.L. 1981) .............................................................................................5

*In re Digit. Advert. Antitrust Litig.*,
555 F. Supp. 3d 1372 (J.P.M.L. 2021) .......................................................... 6, 7, 10, 12

*In re Equity Fund. Corp. of Am. Sec. Litig.*,
375 F. Supp. 1378 (J.P.M.L. 1973) .........................................................................................10

*In re Griseofulvin Antitrust Litig.*,
395 F. Supp. 1402 (J.P.M.L. 1975) ...........................................................................................9

*In re H & R Block Mortg. Corp. Prescreening Litig.*,
435 F. Supp. 2d 1347 (J.P.M.L. 2006) ......................................................................................7

*In re Hawaiian Hotel Room Rate Antitrust Litig.*,
438 F. Supp. 935 (J.P.M.L. 1977) ................................................................................. 5, 7, 15

*In re Heritage Bonds Litig.*,
217 F. Supp. 2d 1369 (J.P.M.L. 2002) ......................................................................................6

*In re Indus. Wine Conts. Sec. Litig.*,
   386 F. Supp. 909 (J.P.M.L. 1975) ...................................................................7

*In re Library Eds. of Children's Books*,
   297 F. Supp. 385 (J.P.M.L. 1968) .................................................................12

*In re Liquid Aluminum Sulfate Antitrust Litig.*,
   159 F. Supp. 3d 1382 (J.P.M.L. 2016) .......................................................5, 10

*In re Merscorp Inc., et al., Real Estate Settlement Procs. Act (RESPA) Litig.*,
   560 F. Supp. 2d 1371 (J.P.M.L. 2008) ...........................................................6

*In re Mortg. Elec. Registration Sys. (MERS) Litig.*,
   659 F. Supp. 2d 1368 (J.P.M.L. 2009) ...........................................................5

*In re Mut. Fund Sales Antitrust Litig.*,
   361 F. Supp. 638 (J.P.M.L. 1973) ...............................................................5, 7

*In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mex., on Apr. 20, 2010*,
   731 F. Supp. 2d 1352 (J.P.M.L. 2010) .........................................................10

*In re Pacquiao-Mayweather Boxing Match Pay-Per-View Litig.*,
   122 F. Supp. 3d 1372 (J.P.M.L. 2015) ...........................................................6

*In re Pilgrim's Pride Fair Lab. Standards Litig.*,
   489 F. Supp. 2d 1381 (J.P.M.L. 2007) .........................................................13

*In re Qualcomm Antitrust Litig.*,
   273 F. Supp. 3d 1373 (J.P.M.L. 2017) .....................................................5, 7, 8

*In re Sugar Indus. Antitrust Litig.*,
   395 F. Supp. 1271 (J.P.M.L 1975) .........................................................5, 7, 10

*In re Toilet Seat Antitrust Litig.*,
   387 F. Supp. 1342 (J.P.M.L. 1975) .........................................................5, 7, 8

*In re UnumProvident Corp. Sec., Derivative & "ERISA" Litig.*,
   280 F. Supp. 2d 1377 (J.P.M.L. 2003) ...........................................................5

*In re Valsartan Prods. Liab. Litig.*,
   433 F. Supp. 3d 1349 (J.P.M.L. 2019) ...........................................................6

## Statutes & Rules

28 U.S.C. § 1407 ..................................................................................passim

Section 3 of the Clayton Act ...........................................................................3

Fed. R. Civ. P. 26(f) ...................................................................................10

Section 5 of the FTC Act....................................................................................................3

Section 1 of the Sherman Act.............................................................................................3

Section 2 of the Sherman Act .............................................................................................3

**Other Authorities**

15 Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 3864 (4th
    ed. 2022) .......................................................................................................................8

Federal Court Management Statistics, United States District Courts—National Judicial Caseload
    Profile, 22, 51 (June 30, 2022).....................................................................................12

MDL Statistics Report-Distribution of Pending MDL Dockets by District, United States
    District Courts (Nov. 15, 2022) ...................................................................................12

Defendants Syngenta Crop Protection AG, Syngenta Corporation, Syngenta Crop Protection, LLC (together, "Syngenta"), Corteva, Inc. ("Corteva"), CHS Inc. ("CHS"), Nutrien Ag Solutions, Inc. ("Nutrien"), Helena Agri-Enterprises LLC ("Helena"), BASF SE, BASF Corp. and BASF Agricultural Products Group (together, "BASF") (collectively, "Defendants"), respectfully submit this response to Motion to Transfer to the Southern District of Indiana for Coordinated or Consolidated Pretrial Proceedings ("Motion" or "Mot.") filed by the plaintiffs in seven private actions[1] filed in Indiana (the "Moving Plaintiffs").

## Preliminary Statement

This litigation involves discount programs for crop protection products.  The programs offer customers lower prices if they choose to purchase more products.  The programs do not require customers to buy *any* products from *any* particular manufacturer.  Although the programs have been in place for many years—plaintiffs themselves allege programs dating back at least to 2004—the Federal Trade Commission (the "FTC") and ten states attorneys general (the "State Plaintiffs") (together with the FTC, the "Government Plaintiffs") filed a lawsuit in the Middle District of North Carolina against Corteva and Syngenta challenging for the first time certain programs as anticompetitive (the "Government Action").  Motions to dismiss already have been filed in that lawsuit.  Since the Government Action was filed, follow-on private actions against Corteva, Syngenta and other named and unnamed manufacturers, wholesalers and retailers of

---

[1] The seven actions filed by the Moving Plaintiffs are *Bradley Day Farms v. Syngenta Crop Protection AG et al.*, No. 22-cv-2223-JMS-MG, DE No. 1 (S.D. Ind. Nov. 17, 2022); *Shelby Farms, LLC et al. v. Syngenta Crop Protection AG et al.*, No. 22-cv-2226-JPH-MJD, DE No. 1 (S.D. Ind. Nov. 17, 2022); *M and M Farms P'ship et al. v. Syngenta Crop Protection AG et al.*, No. 22-cv-2227-JMS-TAB, DE No. 1 (S.D. Ind. Nov. 17, 2022); *HYS Farms, LLC v. Syngenta Crop Protection AG et al.*, No. 22-cv-2229-JMS-MPB, DE No. 1 (S.D. Ind. Nov. 17, 2022); *Danny Day, Jr. Farms et al. v. Syngenta Crop Protection AG et al.*, No. 22-cv-2225-JMS-MJD, DE No. 1 (S.D. Ind. Nov. 17, 2022); *Chuck Day Farms P'ship v. Syngenta Crop Protection AG et al.*, No. 22-cv-2222-JMS-MG, DE No. 1 (S.D. Ind. Nov. 17, 2022); *Scott Day Farms v. Syngenta Crop Protection AG et al.*, No. 22-cv-2230-JMS-TAB, DE No. 1 (S.D. Ind. Nov. 17, 2022).

crop protection products have been filed in both the Middle District of North Carolina (six actions) and the Southern District of Indiana (twelve actions).  Defendants agree that all of the cases raise common issues and coordinating them in one district would be most convenient for the parties and the witnesses and promote the just and the efficient resolution of all of the cases. The Middle District of North Carolina is the only district in which all of the cases can be coordinated, because the Government Action cannot be transferred under § 1407(g) – a point only briefly mentioned and not substantively addressed in the Moving Plaintiffs' Motion.  Thus, all Defendants respectfully submit that these cases should be coordinated in the Middle District of North Carolina, as do several plaintiffs.[2]  The Moving Plaintiffs' request to transfer all private actions to Indiana (and to separate them from where the Government Action is located) should be denied, as it would require duplicative litigation, inconvenience the parties and witnesses, waste judicial and party resources and run the risk of inconsistent rulings.  Under these circumstances, judicial resources would be wasted if the cases are transferred to Indiana (or if the Indiana cases are not transferred to North Carolina), because the court in North Carolina will be deciding the already-filed motions to dismiss in the Government Action.  Thus, the judicial resources invested in resolving these motions would have to be reinvested as to any private actions that remain before another court.

### Statement of Facts

On September 29, 2022, the FTC and ten state attorneys general filed a lawsuit in the Middle District of North Carolina challenging Corteva's and Syngenta's "loyalty programs" (that is, programs that provide price discounts for meeting certain requirements) as anticompetitive

---

[2] Defendants expressly reserve, and do not waive, all rights and defenses, including with respect to personal jurisdiction and the right to seek to sever or separate any claims at a later time.

because the programs allegedly incentivize distributors of all sizes, through discounts, to purchase more products from those manufacturers to the supposed exclusion of generic competitors.[3] *FTC et al. v. Syngenta Crop Protection AG et al.*, No. 22-cv-828-TDS-JEP, DE No. 1 (M.D.N.C. Sept. 29, 2022).  The Government Plaintiffs bring claims under Section 5 of the FTC Act, Section 3 of the Clayton Act, Sections 1 and 2 of the Sherman Act and various state antitrust and consumer protection laws.  The FTC seeks injunctive relief, and the State Plaintiffs seek injunctive relief, disgorgement, restitution and civil penalties.  The Government Action is assigned to Chief Judge Thomas D. Schroeder.

Since the filing of the Government Action, eighteen putative class actions have been filed against certain or all Defendants.  Six have been filed in the Middle District of North Carolina.[4] And twelve have been filed in the Southern District of Indiana.[5]  Each of these putative class actions—like the Government Action—asserts that the price discounts that crop protection product manufacturers offer to distributors who choose to buy their products are anticompetitive, prevent generic manufacturers from effectively distributing generic products, and result in higher prices for crop protection products.  The private plaintiffs seek injunctive and monetary relief on

---

[3] In every related action, Plaintiffs challenge Corteva's and Syngenta's loyalty programs.  Only in some of the actions filed in the Southern District of Indiana are loyalty programs and products offered by BASF challenged.

[4] *Anderson v. Syngenta Crop Protection AG et al.*, No. 22-cv-858-TDS-JEP, DE No. 1 (M.D.N.C. Oct. 7, 2022); *Croscut v. Syngenta Crop Protection AG et al.*, No. 22-cv-899-TDS-JEP, DE No. 1 (M.D.N.C. Oct. 20, 2022); *R & D Adams Dairy Farm, LLC v. Syngenta Crop Protection AG et al.*, No. 22-cv-1050-TDS-JEP, DE No. 1 (M.D.N.C. Dec. 6, 2022); *Sayler Farms, LLC v. Syngenta Crop Protection AG et al.*, No. 22-cv-1055-TDS-JEP, DE No. 1 (M.D.N.C. Dec. 7, 2022); *Deline v. Syngenta Crop Protection AG et al.*, No. 22-cv-1056-TDS-LPA, DE No. 1 (M.D.N.C. Dec. 7, 2022); *Slovak v. Syngenta Crop Protection AG et al.*, No. 22-cv-1059-TDS-JEP, DE No. 1 (M.D.N.C. Dec. 8, 2022).  *Anderson* and *Croscut* were consolidated on November 21, 2022.  *Anderson*, No. 22-cv-858-TDS-JEP, DE No. 25 (M.D.N.C. Nov. 21, 2022).

[5] The seven actions filed by the Moving Plaintiffs and *Jenkins v. Corteva, Inc. et al.*, No. 22-cv-1976-RLY-MJD, DE No. 1 (S.D. Ind. Oct. 7, 2022); *Turner v. Corteva, Inc. et al.*, No. 22-cv-2411-SEB-MG, DE No. 1 (S.D. Ind. Dec. 15, 2022); *Milam v. Syngenta Crop Protection et al.*, No. 22-cv-2410-JRS-TAB, DE No. 2 (S.D. Ind. Dec. 16, 2022); *KM Farms, Inc. v. Corteva, Inc. et al.*, No. 22-cv-2420-TWP-MJD, DE No. 1 (S.D. Ind. Dec. 18, 2022), *Psencik et al. v. Corteva, Inc. et al.*, No. 22-cv-2423-JMS-MPB, DE No. 1 (S.D. Ind. Dec. 19, 2022).

behalf of themselves and other indirect purchasers under federal and state antitrust laws, state consumer protection laws and unjust enrichment theories.

Defendants have been proactive in seeking to coordinate all actions before the Middle District of North Carolina.  On November 22, 2022, the defendants named in the first-filed Indiana case, *Jenkins v. Corteva, Inc. et al.*, filed a motion to transfer the *Jenkins* case to the Middle District of North Carolina pursuant to 28 U.S.C. § 1404(a).  No. 22-cv-1976-RLY-MJD, DE No. 27 (S.D. Ind. Nov. 22, 2022).[6]  That same day, the same defendants filed a motion to extend the time to respond to the *Jenkins* complaint, which the court granted in part, moving the deadline to respond to January 20, 2023.  *See id.*, DE No. 39 (S.D. Ind. Nov. 29, 2022).  On November 22, 2022, the Moving Plaintiffs filed the instant Motion, requesting that the Panel centralize all litigation relating to crop protection product loyalty agreements in the Southern District of Indiana.  On December 1, 2022, the Moving Plaintiffs moved to consolidate all of the cases pending in the Southern District of Indiana.  *Id.*, DE No. 58 (S.D. Ind. Dec. 1, 2022).

On December 12, 2022, Corteva and Syngenta filed motions to dismiss the Government Action.  *FTC*, No. 22-cv-828-TDS-JEP, DE Nos. 64, 65 (M.D.N.C. Dec. 12, 2022).  And on December 13, 2022, the Middle District of North Carolina extended the deadline to respond to the complaints in *Anderson* and *Croscut* to February 14, 2023.  *Anderson*, No. 22-cv-858-TDS-JEP, DE No. 32 (M.D.N.C. Dec. 13, 2022).

Defendants support transfer and coordination of all related cases in the Middle District of North Carolina and respectfully request that the Panel transfer all private actions to the Middle District of North Carolina where one court can coordinate all related cases.

---

[6] Notably, the *Jenkins* case does not name defendant BASF or defendant Helena.

**Standard of Decision**

Under 28 U.S.C. § 1407(a), civil actions pending in different district courts "may be transferred to any district for coordinated or consolidated pretrial proceedings" when they involve "one or more common questions of fact" and where the Panel determines that such transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). By virtue of 28 U.S.C. 1407(g), antitrust actions brought by the United States are not subject to transfer pursuant to Section 1407. Significantly, the Panel has "frequently held that the pendency of a related government action in a particular district is an important factor in selecting the transferee forum" because this best promotes judicial efficiency and convenience for the parties. *In re Sugar Indus. Antitrust Litig.*, 395 F. Supp. 1271, 1274 (J.P.M.L 1975); *accord In re Qualcomm Antitrust Litig.*, 273 F. Supp. 3d 1373, 1376 (J.P.M.L. 2017); *In re Liquid Aluminum Sulfate Antitrust Litig.*, 159 F. Supp. 3d 1382, 1383 (J.P.M.L. 2016); *In re Cuisinart Food Processor Antitrust Litig.*, 506 F. Supp. 651, 653, 655 (J.P.M.L. 1981); *In re Hawaiian Hotel Room Rate Antitrust Litig.*, 438 F. Supp. 935, 936 (J.P.M.L. 1977); *In re Toilet Seat Antitrust Litig.*, 387 F. Supp. 1342, 1344 (J.P.M.L. 1975); *In re Mut. Fund Sales Antitrust Litig.*, 361 F. Supp. 638, 640 (J.P.M.L. 1973).

**Argument**

**I.    THE PENDING ACTIONS ALL INVOLVE ONE OR MORE COMMON QUESTIONS OF FACT THAT REQUIRE COORDINATION**

There is no dispute that the pending cases involve one or more common questions of fact. Common questions of fact exist where actions share common events, defendants, witnesses and/or "core factual allegations". *In re UnumProvident Corp. Sec., Derivative & "ERISA" Litig.*, 280 F. Supp. 2d 1377, 1379 (J.P.M.L. 2003); *see also In re Mortg. Elec. Registration Sys. (MERS) Litig.*, 659 F. Supp. 2d 1368, 1370 (J.P.M.L. 2009) (consolidating actions where they

shared a "factual core"); *In re Pacquiao-Mayweather Boxing Match Pay-Per-View Litig.*, 122 F.

Supp. 3d 1372, 1374 (J.P.M.L. 2015) (same); *In re Digit. Advert. Antitrust Litig.*, 555 F. Supp.

3d 1372, 1377 (J.P.M.L. 2021) (same).

As illustrated in the below table, all of the pending cases involve similar factual issues

relating to crop protection manufacturers' discount programs:

| Common Question | Government Action | *Chuck Day Farms* | *Jenkins* | *Anderson/ Croscut* |
|---|---|---|---|---|
| Relevant market | ¶ 148 | ¶ 146 | ¶ 127 | ¶¶ 63-65 |
| Alleged market power | ¶¶ 144-45 | ¶¶ 157-59 | ¶ 153 | ¶ 62 |
| Alleged unlawful agreements | ¶ 202 | ¶ 166 | ¶ 151 | ¶ 125 |
| Alleged anticompetitive effect | ¶ 157 | ¶ 164 | ¶ 142 | ¶¶ 60-73 |
| Alleged intent | ¶ 53 | ¶ 66 | ¶ 151 | ¶ 39 |
| Alleged monopoly power | ¶¶ 144-45 | ¶¶ 150-52 | ¶¶ 125-26 | ¶ 133 |
| Operative time period | ¶¶ 74, 165 | ¶¶ 161-63 | ¶¶ 27, 153 | ¶ 80 |

The mere fact that the pending cases do not make identical allegations is no impediment

to coordination. *See In re 100% Grated Parmesan Cheese Mktg. & Sales Pracs. Litig.*, 201 F.

Supp. 3d 1375, 1378 (J.P.M.L. 2016) ("Section 1407 does not require a complete identity of

factual issues or parties as a prerequisite to transfer, and the presence of additional facts is not

significant when the actions arise from a common factual core."); *In re Merscorp Inc., et al.,*

*Real Estate Settlement Procs. Act (RESPA) Litig.*, 560 F. Supp. 2d 1371, 1372 (J.P.M.L. 2008)

(same); *In re Heritage Bonds Litig.*, 217 F. Supp. 2d 1369, 1370 (J.P.M.L. 2002) (same).  "[T]he

transferee judge may account, at his discretion, for any differences among the actions by using

appropriate pretrial devices, such as separate tracks for discovery or motion practice".  *In re*

*Valsartan Prods. Liab. Litig.*, 433 F. Supp. 3d 1349, 1352 (J.P.M.L. 2019).

Because all these actions involve the same core factual allegations, centralization will promote the just and efficient conduct of the litigation by eliminating duplicative discovery and avoiding the risk of inconsistent rulings on pretrial matters and dispositive motions.  *See In re Digit. Advert. Antitrust Litig.*, 555 F. Supp. 3d at 1375 ("All actions, whether brought as putative class actions, individual actions, or governmental actions, will require common discovery from . . . the principal and common defendant."); *In re H & R Block Mortg. Corp. Prescreening Litig.*, 435 F. Supp. 2d 1347, 1348 (J.P.M.L. 2006) (centralizing competing class actions filed in several districts "in order to eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel and the judiciary"); *In re Ace Ltd. Sec. Litig.*, 370 F. Supp. 2d 1353, 1355 (J.P.M.L. 2005) (same).

## II.   NORTH CAROLINA IS THE ONLY FORUM IN WHICH ALL CASES CAN BE COORDINATED

A key factor in selecting a forum for centralization is the location of related government proceedings.  *In re Sugar Indus. Antitrust Litig.*, 395 F. Supp. at 1274 ("We have frequently held that the pendency of a related government action in a particular district is an important factor in selecting the transferee forum."); *see also In re Hawaiian Hotel Room Rate Antitrust Litig.*, 438 F. Supp. at 936 (ordering transfer of private actions to a district where a government action was pending); *In re Toilet Seat Antitrust Litig.*, 387 F. Supp. at 1343; *In re Indus. Wine Conts. Sec. Litig.*, 386 F. Supp. 909, 910, 912 (J.P.M.L. 1975); *In re Ampicillin Antitrust Litig.*, 315 F. Supp. 317, 319-20 (J.P.M.L. 1970); *In re Mut. Fund Sales Antitrust Litig.*, 361 F. Supp. at 640; *In re Qualcomm Antitrust Litig.*, 273 F. Supp. 3d at 1376 (all same).  That is especially so in an antitrust action involving numerous parties, including several defendants, where "a great deal of coordination will be necessary between the discovery which all plaintiffs seek here and the proceedings in the United States' action[]".  *In re Toilet Seat Antitrust Litig.*, 387 F. Supp. at

1344; *see also* 15 Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 3864 (4th ed. 2022) ("Antitrust cases are frequently transferred to the district where the government's enforcement action is pending or where the grand jury investigated.").

The location of the government action is of greatest importance where, as here, the government litigant is a federal agency asserting antitrust claims. Under 28 U.S.C. § 1407(g), the Panel cannot transfer "any action in which the United States is a complainant arising under the antitrust laws". Because the Government Action was brought by the FTC, a federal agency, it cannot be transferred by the Panel. *See In re Qualcomm Antitrust Litig.*, 273 F. Supp. 3d at 1374 n.1; *In re Toilet Seat Antitrust Litig.*, 387 F. Supp. at 1344 ("Because neither of the Government actions is subject to transfer under Section 1407, such coordination in this litigation can best be achieved by transferring all actions to the Eastern District of Michigan." (footnote omitted)). Thus, there is only one forum where all cases may be coordinated before a single judge: the Middle District of North Carolina.

The Moving Plaintiffs contend that coordination does not depend on the private cases being assigned to the same district as the Government Action. (Mot. at 13.) But tellingly, they do not (and cannot) dispute that coordinating *all* the cases in North Carolina will allow maximum coordination and best realize the objectives of Section 1407. Nor do they take account of the indisputable advantages of coordinating all of the cases in one place.

*First*, this is antitrust litigation involving several defendants at different levels in the distribution chain. The cases involve common questions of law and fact, including the competitive nature of the challenged discount programs, the programs' impact on competition, market definition and market power, among others. Should pretrial rulings be made "in different districts, sitting in different circuits, the courts . . . deciding the legal and factual issues may

arrive at inconsistent results". *ExpressJet Airlines, Inc. v. RBC Cap. Markets Corp.*, No. H-09-992, 2009 WL 2244468, at *11 (S.D. Tex. July 27, 2009).  Because a primary goal of "[c]entralization under Section 1407" is to "prevent inconsistent pretrial rulings", *In re Citigroup, Inc., Auction Rate Sec. (ARS) Mktg. Litig. (No. II)*, 626 F. Supp. 2d 1329, 1329 (J.P.M.L. 2009), the Middle District of North Carolina is the only appropriate forum for centralization.

*Second*, coordinating all the cases in one court will mitigate the burden on the judiciary. For example, Corteva and Syngenta already have separately moved to dismiss the complaint in the Government Action pending before Chief Judge Schroeder in the Middle District of North Carolina.  *FTC*, No. 22-cv-828-TDS-JEP, DE Nos. 64, 65 (M.D.N.C. Dec. 12, 2022).  In the process of resolving these motions, the court will develop familiarity with the allegations and abundant legal precedent governing antitrust challenges to discounting.  This familiarity will allow the court to more expeditiously resolve the case—an important consideration for the Panel. *See In re Griseofulvin Antitrust Litig.*, 395 F. Supp. 1402, 1403 (J.P.M.L. 1975) ("Judge Aubrey E. Robinson, Jr., to whom the District of Columbia action is assigned, has become acquainted with the issues involved in this litigation, which will enable him to supervise the pretrial proceedings concerning all three actions toward their most just and expeditious termination."). There is no reason for another judge in a different district to deal with similar motions to dismiss in the private cases, and otherwise duplicate the expenditure of judicial resources to resolve the already-filed motions to dismiss in the Government Action in North Carolina (which cannot be transferred).

*Third*, coordination in one court is essential for the smooth progression of discovery, should the cases survive motions to dismiss.  Close coordination will allow document

productions to occur at similar times, ensure that depositions of party and non-party witnesses are not duplicated and allow the parties to present disputes to the court for resolution on a similar timeline.  This is especially important where, as here, all the actions are in their infancy and no discovery has occurred.[7]  Close coordination of all cases is guaranteed only if the private cases are centralized in the Middle District of North Carolina.

## III.    EVEN IF NORTH CAROLINA WERE NOT THE ONLY PLACE WHERE ALL CASES CAN BE COORDINATED, IT IS THE FORUM BEST SUITED FOR THESE CASES

The objective of Section 1407 is to centralize litigation in the district that "will best serve the convenience of the majority of the parties and witnesses and promote the just and efficient conduct of the litigation".  *In re Equity Fund. Corp. of Am. Sec. Litig.*, 375 F. Supp. 1378, 1387 (J.P.M.L. 1973).  To achieve that objective, the Panel considers factors like:  whether there are any parallel government actions, the parties' preferences, docket conditions, the procedural posture of the related actions, where the parties are located and the accessibility of the proposed forum.  *In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mex., on Apr. 20, 2010*, 731 F. Supp. 2d 1352, 1355 (J.P.M.L. 2010); *In re Liquid Aluminum Sulfate Antitrust Litig.*, 159 F. Supp. 3d 1382, 1383 (J.P.M.L. 2016); *In re Sugar Indus. Antitrust Litig.*, 395 F. Supp. at 1274; *In re Digit. Advert. Antitrust Litig.*, 555 F. Supp. 3d at 1375.

These factors weigh heavily in favor of centralization in the Middle District of North Carolina.  Centralizing the private cases in the same district as the Government Action is necessary for one judge to coordinate all related actions.  All Defendants and a number of plaintiffs support centralization in the Middle District of North Carolina.  The docket conditions

---

[7] Though plaintiff in *Jenkins* has served requests for production on defendants in that action, Defendants assert that no Rule 26(f) conference has occurred, and thus discovery has not commenced.

in the Middle District of North Carolina are more favorable than the Southern District of Indiana. Relevant documents and witnesses are located in the Middle District of North Carolina, where Syngenta has its headquarters and principal place of business, BASF's and Syngenta's relevant business operations are based and all Defendants do business.  Although all of the cases are in their infancy, the North Carolina actions are slightly more advanced than the Indiana cases.  And the Middle District of North Carolina and the Southern District of Indiana are accessible fora. None of the named plaintiffs in any of the private actions appears to be based in either Indiana or North Carolina.  In sum, it is most convenient and efficient if the cases are centralized in the Middle District of North Carolina, where all related cases can be coordinated and discovery can proceed in an orderly and efficient manner.  Specifically:

Parallel Government Action.  As stated, the Government Plaintiffs initiated the first-filed case in the Middle District of North Carolina, and follow-on private actions have been filed in both the Middle District of North Carolina and the Southern District of Indiana.  North Carolina is the only place where all of the cases can be coordinated.  Requiring the Government Action and the private actions to be litigated in different districts at the same time would inconvenience the parties and witnesses, waste judicial and party resources, and run the risk of inconsistent rulings.  Coordination of all related actions in one court is necessary to avoid inconsistent rulings on the issues involved in these cases.  Critically, informal coordination would do nothing to mitigate the risk on inconsistent pretrial rulings.  And coordination of all related cases is also crucial to effectuate efficient and orderly pretrial proceedings.  Any differences between the Government Action and private cases can be addressed by the transferee judge, who "may account, at his discretion, for any differences among the actions by using appropriate pretrial

devices, such as separate tracks for discovery or motion practice." *In re Digit. Advert. Antitrust Litig.*,555 F. Supp. 3d at 1376.

Parties' Preferences.  All Defendants support transfer to the Middle District of North Carolina.  And the plaintiffs in the private North Carolina cases (the "North Carolina Plaintiffs") also support coordination in the Middle District of North Carolina.  Although the Moving Plaintiffs argue for transfer to the Southern District of Indiana, they have not articulated a persuasive reason why the Southern District of Indiana is more convenient than the Middle District of North Carolina.  As the Panel has explained, "[o]f course it is to the interest of each plaintiff to have all of the proceedings in his suit handled in his district.  But the Panel must weigh the interests of all the plaintiffs and all the defendants, and must consider multiple litigation as a whole in the light of the purposes of the law." *In re Library Eds. of Children's Books*, 297 F. Supp. 385, 386 (J.P.M.L. 1968).

Docket Conditions.  The Middle District of North Carolina has more favorable docket conditions than the Southern District of Indiana.  The Southern District of Indiana is one of the busiest districts in country.  *See Ellis v. T-H Pro. & Med. Collections, Ltd.*, No. 1:20-CV-00828-JMS-TAB, 2020 WL 4673258, at *5 (S.D. Ind. Aug, 12, 2020).  Judges in the Middle District of North Carolina have an average of 378 cases on their dockets, whereas judges in the Southern District of Indiana have an average of 2,367.  Federal Court Management Statistics, United States District Courts—National Judicial Caseload Profile, 22, 51 (June 30, 2022).  Moreover, there are currently no multidistrict litigation dockets pending in the Middle District of North Carolina, but there is one in the Southern District of Indiana.  MDL Statistics Report—Distribution of Pending MDL Dockets by District, United States District Courts (Nov. 15, 2022).  The relative docket conditions of these districts weighs in favor of the Middle District of North

Carolina.  *See In re Pilgrim's Pride Fair Lab. Standards Litig.*, 489 F. Supp. 2d 1381, 1381 (J.P.M.L. 2007) (selecting transferee district that "does not have any other multidistrict litigation dockets" and "enjoys general docket conditions permitting the Panel to effect the Section 1407 assignment to a court with the resources available to manage this litigation").

Procedural Posture.  The North Carolina cases are somewhat more advanced than the Indiana cases.  Each of the Indiana cases remains at the pleading stage, and no Defendant has yet answered or otherwise responded to any of the private complaints.  On the other hand, Defendants Corteva and Syngenta have already filed separate motions to dismiss in the Government Action, the first-filed case.  *FTC*, No. 22-cv-828-TDS-JEP, DE Nos. 64, 65 (M.D.N.C. Dec. 12, 2022).  The Middle District of North Carolina has already consolidated *Anderson* and *Croscut*.  *Anderson*, No. 22-cv-858-TDS-JEP, DE No. 25 (M.D.N.C. Nov. 21, 2022).  Some North Carolina Plaintiffs have filed a Motion to Appoint Interim Class Counsel in the North Carolina cases.  *Id.*, DE No. 31 (M.D.N.C. Dec. 12, 2022).  And the North Carolina Plaintiffs have been coordinating with the Government Plaintiffs.  Since each of the private actions is at the pleadings stage, there is no reason based on the posture of these cases to transfer to the Southern District of Indiana.  Indeed, given that motions to dismiss have already been filed in the Government Action, the Middle District of North Carolina will now have to decide substantive legal issues that are implicated in all of these related cases.  It makes no sense and is inefficient for another court to do the same, duplicative work in this case.

Parties' Locations.  Even though the Moving Plaintiffs emphasize Corteva's Indiana presence, they ignore Syngenta's and BASF's crop protection operations in North Carolina.  The headquarters and principal place of business of Syngenta Crop Protection, LLC (the Syngenta defendant whose rebate program is being challenged) is in North Carolina.  Decl. of Vern

Hawkins in Supp. of Defs.' Transfer Mot., ¶ 5  *Jenkins*, No. 22-cv-1976-RLY-MJD, DE No. 29-6 (S.D. Ind. Nov. 22, 2022).  The decision-makers for Syngenta's rebate program are located in North Carolina, and the majority of relevant employees and documents are likely to be located in North Carolina.  *Id.* ¶¶ 4-6.  BASF's agricultural products business, which operates the BASF loyalty programs at issue in those complaints naming BASF, is based in North Carolina as well.  Ex. A, Decl. of Kimberly Livecchia-Jeff, ¶ 3.  BASF has over 1,000 employees based out of North Carolina, including 947 personnel in BASF's agricultural products business, and also has multiple laboratories and an agricultural products research farm in the state.  *Id.* at ¶ 4.  And all Defendants (except some parent companies) conduct some business in North Carolina.

Thus, there is a very substantial volume of relevant witnesses and documents located in the Middle District of North Carolina.  *See In re Chocolate Confectionary Antitrust Litig.*, 542 F. Supp. 2d 1376, 1377 (J.P.M.L. 2008) ("Because defendant Hershey's worldwide headquarters are located there, and several of the defendants maintain a presence in or near that district, relevant documents and witnesses are likely located in that area.").  Notably, none of the named Plaintiffs is located in either North Carolina or Indiana.  Therefore, there is no natural advantage to them to litigate in Indiana as opposed to North Carolina.

Accessibility.  Both the Middle District of North Carolina and the Southern District of Indiana are located in accessible, metropolitan areas.  So, this factor is neutral.  Plaintiffs argue that the Southern District of Indiana is more accessible than the Middle District of North Carolina, but Plaintiffs place undue emphasis on the closest airport to the courthouse in the Middle District of North Carolina.  (Mot. at 11.)  There are three major airports located in close proximity to the Winston-Salem courthouse—in Charlotte, Raleigh-Durham and Winston-Salem.  Moreover, even if the Southern District of Indiana were slightly more accessible by air, the

marginal benefit would not outweigh the significant efficiencies that would be gained from having one court coordinate all related cases.  For example, despite objections regarding inconvenient travel, the Panel has previously centralized cases in the District of Hawaii when a related government action was proceeding in that district.  *See In re Hawaiian Hotel Room Rate Antitrust Litig.*, 438 F. Supp. at 936.

On balance, centralization in the Middle District of North Carolina will best serve the convenience of the majority of the parties and witnesses and promote the just and efficient conduct of the litigation.  In contrast, requiring the Government Action and the private cases to be litigated in different districts at the same time would inconvenience the parties and witnesses, waste judicial and party resources, and run the risk of inconsistent rulings.

## Conclusion

For the foregoing reasons, Defendants respectfully request that the Panel transfer the cases identified in the attached Schedule of Actions to the United States District Court for the Middle District of North Carolina for coordination or consolidation.

Respectfully submitted this 19th day of December, 2022.

CRAVATH, SWAINE & MOORE LLP

/s/ David R. Marriott
David R. Marriott
825 Eighth Avenue
New York, New York 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700
dmarriott@cravath.com

*Counsel for Defendant Corteva, Inc.*

DAVIS POLK & WARDWELL LLP

/s/ Paul S. Mishkin
Paul S. Mishkin
450 Lexington Avenue
New York, NY 10017
Telephone: (212) 450-4292
Facsimile: (212) 701-5292
paul.mishkin@davispolk.com

*Counsel for Defendants Syngenta Crop Protection AG, Syngenta Corporation, and Syngenta Crop Protection, LLC*

17

BRYAN CAVE LEIGHTON PAISNER
LLP

/s/ G. Patrick Watson
G. Patrick Watson
1201 W. Peachtree Street
Atlanta, GA 30309
Telephone: (404) 572-6600
Facsimile: (404) 572-6999
patrick.watson@bclplaw.com

*Counsel for Defendant Nutrien Ag*
*Solutions, Inc.*

FAEGRE DRINKER BIDDLE &
REATH LLP

/s/ Kathy Osborn
Kathy Osborn
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
kathy.osborn@faegredrinker.com

*Counsel for Defendant CHS Inc.*

PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP

/s/ William Michael
William Michael
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3648
Facsimile: (212) 492-0648
wmichael@paulweiss.com

*Counsel for Defendant Helena Agri-Enterprises, LLC*

WEIL, GOTSHAL & MANGES LLP

/s/ Adam C. Hemlock
Adam C. Hemlock
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8281
Facsimile: (212) 310-8007
adam.hemlock@weil.com

*Counsel for Defendant BASF SE, BASF Corp., and BASF Agricultural Products Group*