**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: CROP PROTECTION PRODUCTS LOYALTY PROGRAM ANTITRUST LITIGATION | MDL No. 3062 |

**FIRST-FILER GROUP'S BRIEF IN SUPPORT OF INDIANA PLAINTIFFS'
MOTION TO TRANSFER/CONSOLIDATE LOYALTY PROGRAM ACTIONS
UNDER 28 U.S.C. §1407 IN THE SOUTHERN DISTRICT OF INDIANA**

**TABLE OF CONTENTS**

I. BACKGROUND…………………………………………………………………..1

II. ARGUMENT………………………………………………………………….4

A. The Southern District of Indiana is a More Convenient Forum than the Middle District of North Carolina for a Complex National Class Action………………………………..4

B. Most Private Actions Are Pending in the Southern District of Indiana (Including the First-Filed *Jenkins* Action) and Are Proceeding Expeditiously……………………………...6

C. Transfer to the M.D.N.C. Will Not Result in Meaningful Efficiency Gains………………….8

CONCLUSION…………………………………………………………………..11

## TABLE OF AUTHORITIES

*Illinois Brick v. Illinois*, 431 U.S. 720 (1977)……………………………………..…………7-8

*In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 410 F. Supp. 3d 1350 (J.P.M.L. 2019)……………………………………………………………..……………...9

*In re Amino Acid Lysine Antitrust Litig.*, 910 F. Supp. 696 (J.P.M.L. 1995)…………...……………..9

*In re Cobra Tax Shelters Litig.*, 408 F. Supp. 2d 1348 (J.P.M.L. 2005)………...…………………7

*In re Commercial Lighting Products, Inc. Contract Litigation*, 415 F. Supp. 392 (J.P.M.L. 1976)………………………………………………………………………………9

*In re Cook Med., Inc., IVC Filters Mktg., Sales & Practices & Prods. Liab. Litig.*, 53 F. Supp. 3d 1379 (J.P.M.L. 2014)………………………………………………………………6

*In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig.*, 446 F. Supp. 242 (J.P.M.L. 1978)………………………………………………………………………………9

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 196 F. Supp. 2d 1375 (J.P.M.L. 2002)…………………………………………………………………………………………5

*In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.*, 2020 U.S. Dist. LEXIS 184766 (J.P.M.L. Oct. 2, 2020)……………………………………………….....4

*In re GMAC Ins. Mgmt. Corp. Overtime Pay Litig.*, 342 F. Supp. 4 1357 (J.P.M.L. 2004)………………………………………………………………………………6

*In re Google Antitrust Litig.*, 521 F. Supp. 3d 1358 (J.P.M.L. 2021)………………………8,9-10

*In re Humira (Adalimumab) Antitrust Litig.*, 465 F. Supp. 3d 811 (N.D. Ill. 2020)…………...……8

*In re Laughlin Products, Inc., Patent Litig.*, 240 F. Supp. 2d 1358 (J.P.M.L. 2003)…………...……5

*In re Library Editions of Children's Books*, 297 F. Supp. 385 (J.P.M.L. 1968)……………...……..6

*In re: Lidoderm Antitrust Litig.*, 11 F. Supp. 3d 1344 (J.P.M.L. 2014)……………...…………….4

*In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369 (D.D.C. 2002)…...……………10

*In re Method of Processing Ethanol Byproducts & Related Subsystems ('858) Patent Litig.*, 730 F. Supp. 2d 1379 (J.P.M.L. 2010)………………………………………………5

*In re Nat'l Arbitration Forum Antitrust Litig.*, 682 F. Supp. 2d 1343 (J.P.M.L. 2010)…………..…6

*In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375 (J.P.M.L. 2017)…………………....6

*In re Qualcomm Antitrust Litig.*, 273 F. Supp. 3d 1373 (J.P.M.L. 2017)……………………...…9

*In re Smith & Nephew BHR & R3 Hip Implant Prods. Liab. Litig.*, 249 F. Supp. 3d 1348 (J.P.M.L. 2017)……………………………………………………………………..…6

*In re Sonic Corp. Customer Data Sec. Breach Litig.*, 276 F. Supp. 3d 1382 (J.P.M.L. 2017)……………………………………………………………………………………6

*In re Sugar Indus. Antitrust Litig.*, 405 F. Supp. 1404 (J.P.M.L. 1975)………...…………………9

*In re Takata Airbag Prods. Liab. Litig.*, 84 F. Supp. 3d 1371 (J.P.M.L. 2015)…...………………9

*In re Texas Instruments, Inc. Employment Practices Litigation*, 441 F. Supp. 928 (J.P.M.L. 1977)………………………………………………………………………………9

*In re Total Body Formula Prods. Liab. Litig.*, 582 F. Supp. 2d 1381 (J.P.M.L. 2008)…………….…6

*In re Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d 1350 (J.P.M.L. 2012)…… ……….4

*Marion Healthcare, LLC v. Becton Dickinson & Co.*, 952 F.3d 832 (7th Cir. 2020)…………...…….7

*Paper Sys. v. Nippon Paper Indus. Co.*, 281 F.3d 629 (7th Cir. 2002)………………………….…7

*United States v. Dentsply Int'l, Inc.*, 190 F.R.D. 140 (D. Del. 1999)…………………...………11

28 U.S.C. § 1404……………………………………………………………………...……3

28 U.S.C. § 1407………………………………………………………………………1,3,9

Fed. R. Civ. P. 23……………………………………………………………………...…10

Fed. R. Civ. P. 26(f)…………………………………………………………………….3,7

Plaintiff Justin Jenkins ("Plaintiff"), who filed the first private loyalty program class action on behalf of himself and a proposed class of farmers,[1] along with eight other private plaintiffs who bring related antitrust actions in the Southern District of Indiana[2] (collectively, the "First-Filer Group"), submit this brief in support of the other Indiana Plaintiffs' motion to centralize all related proceedings in the Southern District of Indiana pursuant to 28 U.S.C. §1407 ("Motion").[3]

The First-Filer Group agrees with the other Indiana Plaintiffs that consolidation under 28 U.S.C. §1407 is appropriate: The loyalty program class actions involve common questions of law and fact, and they assert claims against the same pool of defendants. The First-Filer Group also submits that, for the reasons set forth below, the Southern District of Indiana is a more advantageous transferee forum than the Middle District of North Carolina ("M.D.N.C."), where the other private actions (and the FTC's action) are pending.

## I.   BACKGROUND

On September 29, 2022, the FTC and ten states, including Indiana, brought suit against the manufacturers Syngenta and Corteva in the M.D.N.C. alleging an unlawful conspiracy to suppress generic competition in the markets for crop protection products (the "FTC Action").[4] As part of the alleged conspiracy, Syngenta and Corteva, who sell branded crop protection products ("CPPs"), entered into anticompetitive "loyalty" agreements with distributors and

---

[1] *Jenkins v. Syngenta, et al.*, No. 22-1976 (S.D. Ind. Oct. 7, 2022).

[2] *Turner v. Corteva, Inc., et al.*, No. 22-2411 (S.D. Ind. Dec. 15, 2022); *KM Farms, Inc., et al. v. Corteva, Inc., et al.*, No. 22-2420 (S.D. Ind., Dec. 18, 2022); *Psencik, et al. v. Corteva, Inc., et al.*, No. 22-2423 (S.D. Ind., Dec. 19, 2022).

[3] ECF Nos. 1 and 2.

[4] Compl., *FTC, et al. v. Syngenta Crop Protection AG, et al.*, No. 22-828 (M.D.N.C. Sept. 29, 2022), ECF No. 1 ("FTC Compl.").

retailers to inhibit the sale of less-expensive generic CPPs that compete with branded CPPs (the "loyalty program conspiracy").[5] Such anticompetitive activity by CPP manufacturers and sellers contributes significantly to escalating costs facing U.S. farmers, and, in turn, to the rising cost of food to consumers.[6]

      On October 7, 2022, in the Southern District of Indiana, Plaintiff Justin Jenkins filed the first private antitrust suit (the "*Jenkins* Action").[7] Plaintiff alleges that he and other similarly situated farmers paid inflated prices for CPPs as a result of the loyalty program conspiracy.[8] Subsequently, eleven additional cases were filed in the Southern District of Indiana (together with the *Jenkins* Action, the "Indiana Cases"),[9] and six additional cases were filed in the

---

[5] *Id.*

[6] Lina M. Khan, *Opinion: Ag companies' loyalty programs unfairly extract profits from consumers*, DES MOINES REGISTER (Oct. 6, 2022), https://www.desmoinesregister.com/story/opinion/columnists/2022/10/06/syngenta-corteva-farmers-lawsuit-unfairly-extract-profits-from-consumers/69542239007/ (last visited Dec. 4, 2022). One prominent agronomics professor estimates that it cost farmers about 40% more to grow crops this year as compared to two years ago. *See* Sarah Bowman, *Feeling the pinch: 'Most expensive crop in decades': Farmers face higher stakes than ever with inflation*, THE INDIANAPOLIS STAR (Sep. 30, 2022), https://www.indystar.com/in-depth/news/environment/2022/09/30/stakes-higher-than-ever-for-farmers-as-they-feel-squeeze-of-inflation/69520689007 (last visited Dec. 4, 2022).

[7] *Jenkins v. Corteva et al.*, No. 22-1976 (S.D. Ind. Oct. 7, 2022), ECF No. 1.

[8] *Id.* at ¶¶ 141, 152.

[9] *Chuck Day Farms Partnership v. Syngenta Crop Protection AG, et al.*, No. 22-2222 (S.D. Ind. Nov. 17, 2022); *Bradley Day Farms v. Syngenta Crop Protection AG, et al.*, No. 22-2223 (S.D. Ind. Nov. 17, 2022); *Danny Day, Jr. Farms, et al. v. Syngenta Crop Protection AG, et al.*, No. 22-2225 (S.D. Ind. Nov. 17, 2022); *Shelby Farms, LLC, et al. v. Syngenta Crop Protection AG, et al.*, No. 22-2226 (S.D. Ind. Nov. 17, 2022); *M&M Farms P'ship v. Syngenta Crop Protection AG, et al.*, No. 22-2227 (S.D. Ind. Nov. 17, 2022); *HYS Farms LLC v. Syngenta Crop Protection AG*, No. 22-2229 (S.D. Ind. Nov. 17, 2022); *Scott Day Farms v. Syngenta Crop Protection AG, et al.*, No. 22-2230 (S.D. Ind. Nov. 17, 2022); *Milam v. Syngenta Crop Protection et al.*, No. 22-2410 (S.D. Ind. Dec. 15, 2022); *Turner v. Corteva, Inc., et al.*, No. 22-2411 (S.D. Ind. Dec. 15, 2022); *KM Farms, Inc., et al. v. Corteva, Inc., et al.*, No. 22-2420 (S.D. Ind. Dec. 18, 2022); *Psencik, et al. v. Corteva, Inc., et al.*, No. 22-2423 (S.D. Ind. Dec. 19, 2022).

M.D.N.C. (the "North Carolina Cases").[10]

On November 22, 2022, the defendants in the *Jenkins* Action moved to transfer proceedings to the M.D.N.C. pursuant to 28 U.S.C. § 1404(a).[11] Plaintiff opposed that motion,[12] which is now fully briefed and *sub judice.*[13] The *Jenkins* defendants also sought a stay pending resolution of their transfer motion, but their request was denied and they were ordered to file their response to the *Jenkins* complaint by January 20, 2023.[14] On November 28, 2022, the parties held a Rule 26(f) conference; Plaintiff Jenkins then served initial discovery requests on the defendants on November 30, 3022.[15]

Plaintiffs in several other Indiana Cases (the "Indiana Plaintiffs") moved before this Panel, on November 22, 2022, to transfer the North Carolina Cases to the Southern District of Indiana pursuant to 28 U.S.C. § 1407.[16] The Indiana Plaintiffs have also moved to consolidate

---

[10] *Anderson v. Syngenta Crop Protection AG et al.*, No. 22-858 (M.D.N.C. Oct 7, 2020); *Croscut v. Syngenta Crop Protection AG et al.*, No. 22-899 (M.D.N.C. Oct. 20, 2022); *R&D Adams Dairy Farm, LLC v. Syngenta Crop Protection AG, et al.*, No. 22-1050 (M.D.N.C. Dec. 6, 2022); *Sayler Farms, LLC v. Syngenta Crop Protection AG, et al.*, No. 22-1055 (M.D.N.C. Dec. 7, 2022); *DeLine v. Syngenta Crop Protection AG, et al.*, No. 22-1056 (M.D.N.C. Dec. 7, 2022); *Slovak v. Syngenta Crop Protection AG, et al.*, No. 22-1050 (M.D.N.C. Dec. 8, 2022).

[11] Defs.' Mot. to Transfer, *Jenkins v. Corteva*, No. 22-1976 (S.D. Ind. Nov. 22, 2022), ECF No. 27.

[12] Pls. Opp. to Defs. Mot. to Transfer, *Jenkins v. Corteva*, No. 22-1976 (S.D. Ind. Dec. 6, 2022), ECF No. 63.

[13] *Jenkins v. Corteva*, No. 22-1976 (S.D. Ind.), ECF Nos. 27-29, 63, 66, 68.

[14] Scheduling Order, *Jenkins v. Corteva*, No. 22-1976 (S.D. Ind. Nov. 29, 2022), ECF No. 39 (refusing to "[g]rant[] [Defendants'] request" in full because it would effectively "stay . . . proceedings pending resolution of the Motion to Transfer", which was "unnecessary" in court's view).

[15] *See* Declaration of John D. Radice, *Jenkins v. Corteva*, No. 22-1976 (S.D. Ind. Dec. 15, 2022), ECF No. 68-2.

[16] ECF No. 1, amended as ECF No. 2.

the Indiana Cases before Judge Young in the Southern District of Indiana.[17]

## II. ARGUMENT

**A.** **The Southern District of Indiana is a More Convenient Forum than the Middle District of North Carolina for a Complex National Class Action.**

This Panel weighs the comparative advantages of potential transferee forums and considers which will be most convenient for the aggregate of the parties and witnesses.[18] Here, the Southern District of Indiana is more convenient than the Middle District of North Carolina. While one of the manufacturer defendants, Syngenta, is located in the M.D.N.C., the other, Corteva, is located in the Southern District of Indiana. The other named defendants (distributors and retailers involved in the loyalty program conspiracy) are located across the country, as are the majority of likely witnesses.[19] Plaintiffs are likewise dispersed across the country. For these dispersed parties and witnesses (and their counsel at law firms across the country), the Southern District of Indiana is a far more convenient forum than the M.D.N.C.

The relevant Southern District of Indiana courthouse is located in Indianapolis. Indianapolis is a centrally located metropolis with ample hotel and office accommodations, and

---

[17] Related Plaintiffs' Mot. to Consolidate Cases, *Jenkins v. Corteva*, No. 22-1976 (S.D. Ind. Dec. 1, 2022), ECF No. 58.

[18] *In re: Lidoderm Antitrust Litig.*, 11 F. Supp. 3d 1344, 1345 (J.P.M.L. 2014) (selecting transfer forum based in part on the fact that it "likely will be the most convenient for the greatest number of parties in this litigation."); *In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.*, MDL No. 2814, 2020 U.S. Dist. LEXIS 184766, at *6 (J.P.M.L. Oct. 2, 2020) ("In deciding transfer, the Panel 'look[s] to the overall convenience of the parties and witnesses, not just those of a single plaintiff or defendant in isolation.'") (quoting *In re Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d 1350, 1351-52 (J.P.M.L. 2012)).

[19] *See* Defs.' Br. in Supp. of Mot. to Transfer, *Jenkins v. Corteva*, No. 22-1976 (S.D. Ind. Nov. 22, 2022), ECF No. 28 at 8. (noting defendants are located in various states and that witnesses they will likely call "are located all across the country").

a well-developed support system for legal services.[20] It is also easily accessible by land and air. Known as the "Crossroads of America," Indianapolis sits at the intersection of four major interstates. The Indianapolis International Airport, which is only a 15-minute drive from the federal courthouse in Indianapolis,[21] is a major air travel hub averaging 145 departures per day, with nonstop flights to 53 destinations.[22] These factors make the "readily accessible" Southern District of Indiana an ideal transferee forum.[23]

By contrast, Winston-Salem (where the relevant M.D.N.C. federal courthouse is located[24]) is a much smaller city, with far fewer hotel, travel, and business accommodations. The airport nearest to the Winston-Salem federal courthouse (Piedmont Triad International Airport in Greensboro, North Carolina) has nonstop flights to only 12 destinations.[25] As a result, Winston-Salem is significantly less accessible than Indianapolis, particularly for

---

[20] *See, e.g., Meeting Hotels*, VISIT INDY, https://www.visitindy.com/meetings/meeting-facilities/meeting-hotels/ (the Indianapolis metro area has a total of 34,000 hotel rooms, over 7,500 of which are in the downtown area alone, and many hotels have conference rooms available) (last visited Dec. 16, 2022).

[21] *Indianapolis International Airport*, VISIT INDY, https://www.visitindy.com/listing/indianapolis-international-airport/166220 (last visited Dec. 4, 2022).

[22] *Id.*

[23] *In re Method of Processing Ethanol Byproducts & Related Subsystems ('858) Patent Litig.*, 730 F. Supp. 2d 1379, 1380 (J.P.M.L. 2010).*See also In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 196 F. Supp. 2d 1375, 1376-77 (J.P.M.L. 2002) (transferring litigation to a district court "in a major metropolitan center that is well served by major airlines, provides ample hotel and office accommodations, and offers a well-developed support system for legal services."); *In re Laughlin Products, Inc., Patent Litig.*, 240 F. Supp. 2d 1358, 1359 (J.P.M.L.2003) (transferring to "an accessible metropolitan district").

[24] Order, *Anderson v. Syngenta.*, No. 22-858 (Nov. 21, 2022), ECF No. 25 (consolidating North Carolina actions in front of Chief Judge Thomas D. Schroeder who sits in Winston-Salem).

[25] *Airport Facts Brochure*, PIEDMONT TRIAD INTERNATIONAL AIRPORT, https://flyfrompti.com/download/airport-facts-brochure, p. 5 (last visited Dec. 4, 2022). The Raleigh-Durham and Charlotte-Douglas airports are larger but are some 90 minutes from the federal courthouse where an MDL would proceed. *See* Defs.' Rep. in Supp. of Mot. for Ext. of Time, *Jenkins v. Corteva*, No. 22-1976 (Nov. 28, 2022), ECF No. 32 at 5, n.3.

witnesses and parties traveling there from the Midwest or West Coast.[26]

**B.** **Most Private Actions Are Pending in the Southern District of Indiana (Including the First-Filed *Jenkins* Action) and Are Proceeding Expeditiously.**

In determining where to centralize proceedings, the Panel considers the location of the various pending actions,[27] including the location of the first-filed action.[28] These factors weigh strongly in favor of consolidation in the Southern District of Indiana. The vast majority of private plaintiffs (22 out of 28 plaintiffs, representing 12 out of 18 total private actions) have chosen to file suit in the Southern District of Indiana, including the plaintiff in the first-filed *Jenkins* Action pending before Judge Young.[29]

---

[26] *In re Library Editions of Children's Books*, 297 F. Supp. 385, 387 (J.P.M.L. 1968) (case in which constituent actions spanned the country, with many actions in California and on the East Coast; JPML transferred all actions to the Northern District of Illinois, noting that "there is . . . something to be said for the convenience of a geographically central forum in coast-to-coast litigation"); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, 276 F. Supp. 3d 1382, 1383 (J.P.M.L. 2017) (centralizing cases in the Northern District of Ohio, "a centrally-located and easily accessible location"); *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1379 (J.P.M.L. 2017) (centralizing cases in the Northern District of Ohio, "a geographically central and accessible forum").

[27] *See, e.g.*, *In re Cook Med., Inc., IVC Filters Mktg., Sales & Practices & Prods. Liab. Litig.*, 53 F. Supp. 3d 1379, 1381 (J.P.M.L. 2014) (selecting Southern District of Indiana in part because "[m]ore than half of the actions are pending in this district, almost all before Judge Richard L. Young"); *In re Nat'l Arbitration Forum Antitrust Litig.*, 682 F. Supp. 2d 1343, 1345–46 (J.P.M.L. 2010) (selecting District of Minnesota, in part because seven of ten actions were already pending in that district); *In re Total Body Formula Prods. Liab. Litig.*, 582 F. Supp. 2d 1381, 1382 (J.P.M.L. 2008) (finding Northern District of Alabama was an appropriate transfer district given that fourteen of twenty actions were pending there).

[28] *See, e.g.*, *In re Smith & Nephew BHR & R3 Hip Implant Prods. Liab. Litig.*, 249 F. Supp. 3d 1348, 1352 (J.P.M.L. 2017) (selecting transferee district in part because the first-filed action was pending there); *In re GMAC Ins. Mgmt. Corp. Overtime Pay Litig.*, 342 F. Supp. 2d 1357, 1358 (J.P.M.L. 2004) (same).

[29] *See supra* notes 1, 9, and 10.

The Indiana Cases are also advancing more expeditiously than the North Carolina Cases, another basis to centralize proceedings in the Southern District of Indiana.[30]  In the *Jenkins* action, the parties held a Rule 26(f) conference and Plaintiff served initial discovery requests;[31] Defendants must respond to the *Jenkins* complaint by January 20, 2023, and an initial pre-trial conference is scheduled for January 25, 2022.[32] No such progress has been made in the North Carolina Cases.

Plaintiffs have overwhelmingly chosen the Southern District of Indiana in part because, in addition to its overall convenience, the Seventh Circuit has a well-developed body of law, going back decades, concerning antitrust standing of purchasers in the vertical conspiracy context.[33] The Fourth Circuit is far less clear on this issue of law, which will cause the parties to expend resources litigating these issues in an uncertain legal landscape. If this Action is transferred to the M.D.N.C., the defendants will likely advance standing arguments, that, if accepted, would block tens of thousands of farmers who purchased from retailers and distributors, rather than manufacturers, from recovering against defendants Corteva and Syngenta in a nationwide class action. These plaintiffs' only recourse would be to bring multiple state law claims under statutes passed by some states repealing *Illinois Brick*.[34] But this

---

[30] *See In re Cobra Tax Shelters Litig.*, 408 F. Supp. 2d 1348, 1349 (J.P.M.L. 2005) (finding "the Southern District of Indiana [to be] a preferable transferee forum", noting "the action in the Southern District of Indiana has progressed somewhat further than the Western District of Texas actions").

[31] Declaration of John D. Radice, *Jenkins v. Corteva*, No. 22-1976 (S.D. Ind. Dec. 15, 2022), ECF No. 68-2.

[32] Scheduling Order, *Jenkins v. Corteva*, No. 22-1976 (S.D. Ind. Nov. 29, 2022), ECF No. 39.

[33] *See Marion Healthcare, LLC v. Becton Dickinson & Co.*, 952 F.3d 832, 837-41 (7th Cir. 2020), citing *Paper Sys. v. Nippon Paper Indus. Co.*, 281 F.3d 629 (7th Cir. 2002).

[34] 431 U.S. 720 (1977). *Illinois Brick* established the rule that only direct purchasers of goods may seek damages under federal law for antitrust violations. *Id.* at 745-47. Indirect purchasers may only bring damages suits under state law if they live in states that have legislatively

state-law approach would leave farmers from the approximately 20 states without "repealer" statutes without any ability to recover against the manufacturer defendants, despite having been harmed by the conspiracy. Consolidation in the Southern District of Indiana is plainly in the best interest of the parties and of the proposed class, and there is no basis to consolidate the private actions in an inconvenient forum that has been chosen by a minority of private plaintiffs, and which would imperil the ability of a substantial portion of proposed class to recover damages.

### C.   Transfer to the M.D.N.C. Will Not Result in Meaningful Efficiency Gains.

The fact that the FTC Action is pending in the M.D.N.C. does not warrant consolidation of the private actions there. As an initial matter, neither federal district courts nor this Panel require government and follow-on private actions to proceed in the same jurisdiction.[35] As recently as last year, this Panel transferred and consolidated the *Google* private antitrust actions to the Northern District of California, even though the FTC action was taking place in the District of D.C.[36] That is because, as this Panel has long recognized, cross-district coordination is possible, and can effectively mitigate the risks of duplicative

---

repealed *Illinois Brick. See In re Humira (Adalimumab) Antitrust Litig.*, 465 F. Supp. 3d 811, 849 (N.D. Ill. 2020) ("Some states have enacted '*Illinois Brick* repealer' statutes that allow indirect purchasers to sue for money damages.").

[35] For example, the FTC and private antitrust suits against Meta, Surescripts, and Google are currently taking place in separate forums, with effective cross-district coordination ongoing. *See FTC v. Meta Platforms, Inc.* No. 20-3590 (D.D.C.); *Klein et al v. Meta Platforms, Inc.*, No. 20-8570 (N.D. Cal.) (parallel private antitrust class action); *FTC v. Surescripts*, No. 19-1080 (D.D.C.); *In re Surescripts Antitrust Litig.*, No. 19-6627 (N.D. Ill.) (parallel private action); *United States v. Google LLC*, C.A. No. 20-3010 (D.D.C.); *In re Google Play Store Antitrust Litig.*, No. 21-md-02981-JD (N.D. Cal.) (parallel private action).

[36] *In re Google Antitrust Litig.*, 521 F. Supp. 3d 1358, 1359 n.5 (J.P.M.L. 2021). *See also United States v. Google LLC*, No. 20-3010 (D.D.C.).

discovery, inconvenience to parties and witnesses, and inconsistent pretrial rulings.[37] As the

Panel noted in *Eli Lilly*, "consultation and cooperation among the [involved] concerned district

courts. . . , coupled with the cooperation of the parties, would be sufficient to minimize the

possibility of conflicting pretrial rulings."[38]

    Moreover, there are few efficiencies to be gained by transferring follow-on antitrust

class actions to the forum in which the FTC suit has been brought. Under § 1407, FTC suits

cannot be consolidated with follow-on private actions.[39] And, as a practical matter, public and

---

[37] *In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig.*, 446 F. Supp. 242, 244 (J.P.M.L. 1978) ("For example, notices for a particular deposition could be filed in all actions, thereby making the deposition applicable in each action; the parties could seek to agree upon a stipulation that any discovery relevant to more than one action may be used in all those actions; and any party could seek orders from the three courts directing the parties to coordinate their pretrial efforts.") (citing *In re Commercial Lighting Products, Inc. Contract Litigation*, 415 F. Supp. 392, 393 (J.P.M.L. 1976)). *See also In re Amino Acid Lysine Antitrust Litig.*, 910 F. Supp. 696, 701 (J.P.M.L. 1995) (noting that in creating MDLs in three districts "litigation, discovery and other pretrial proceedings are likely to overlap," but the Panel is "confident, however, that [the three District Court judges], through communication and cooperation with each other as well as with the parties, will effectively coordinate proceedings, whenever necessary."); *In re Sugar Indus. Antitrust Litig.*, 405 F. Supp. 1404, 1407 (J.P.M.L. 1975) (of the Northern District of California.] and Cahn [of the Eastern District of Pennsylvania] expressing confidence that judges in different districts "will, in their mutual discretion, coordinate the pretrial proceedings in both transferee districts whenever such coordination becomes necessary" and "hope that the parties and judges will design a joint pretrial program that will minimize any unnecessary inconvenience to [the parties]."); *In re Qualcomm Antitrust Litig.*, 273 F. Supp. 3d 1373, 1376 (J.P.M.L. 2017) ("While [plaintiffs in different districts] will seek to obtain some of the same documentary and testimonial evidence …we are convinced that any common discovery can be coordinated among the parties and the involved courts…").

[38] *In re Eli Lilly*, 446 F. Supp. at 244 (citing *In re Texas Instruments, Inc. Employment Practices Litigation*, 441 F. Supp. 928, 929 (J.P.M.L. 1977)). *See also In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 410 F. Supp. 3d 1350, 1354 n.9 (J.P.M.L. 2019) (declining to transfer cases to the district where a defendant's bankruptcy was pending, JPML noted that "the transferee judge and the bankruptcy judge need not sit in the same district to be able to coordinate informally on matters arising in the MDL that implicate the bankruptcy proceeding") (citation and internal quotation marks omitted); *In re Takata Airbag Prods. Liab. Litig.*, 84 F. Supp. 3d 1371, 1373 n.4 (J.P.M.L. 2015) (same).

[39] 28 U.S.C. § 1407(g) ("Nothing in this section shall apply to any action in which the United States is a complainant arising under the antitrust laws"). *See also In re Google Antitrust Litig.*, 521 F. Supp. 3d 1358, 1359 n.5 (J.P.M.L. 2021) (noting 28 U.S.C. § 1407(g) prohibits transfer of

private antitrust suits cannot be placed on parallel schedules because private antitrust plaintiffs must address a variety of complex legal and factual issues that do not apply to the government. Private plaintiffs must establish antitrust standing, meet the standards for class certification under Federal Rule 23, and prove and calculate damages. Each of these issues is heavily litigated, including through expert discovery, and requires significant time and resources to resolve. These substantive differences almost always result in separate scheduling tracks for the government and private actions. As a result, certain inefficiencies (such as witnesses having to testify twice) can crop up even where the FTC and private actions proceed in the same district. The only way to mitigate such inefficiencies is through effective informal coordination, which will occur regardless of whether the private actions proceed in the forum in which the FTC action is pending.[40]

Even if parallel schedules could somehow be imposed upon government and private actions, it would not be judicially efficient or in the public interest. Private antitrust suits generally take far longer to reach resolution than government actions.[41] Keeping FTC and

---

public antitrust actions and centralizing private actions in the Northern District of California, despite the fact that the DOJ action is in the District of Columbia).

[40] When public and private suits proceed in different fora, cross-district coordination is routine. For example, such coordination occurred in the *Surescripts* and *Qualcomm* antitrust litigations, and was the subject of various case management orders. *See, e.g.*, Scheduling Order at 3, *FTC v. Surescripts*, No. 19-1080 (D.D.C. Feb. 28, 2020), ECF No. 54 ("The parties [in the FTC action in the District of D.C.] are ordered to use reasonable best efforts to cooperate with each other and other parties in *In re Surescripts Antitrust Litig.*, [the related private action in the Northern District of Illinois], to reduce discovery burdens."); Joint Stip. & Discovery Coordination Order, *FTC v. Qualcomm, Inc.*, 17-220 (N.D. Cal. Jan. 24, 2018), ECF No. 513 (order regarding cross-district discovery coordination between N.D. Cal. and S.D. Cal. actions).

[41] In the *Lorazepam* antitrust litigation, it took three years from the filing of the FTC complaint for the government to obtain relief through settlements that were granted final approval by the court. *See In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 372-73 (D.D.C. 2002). The private plaintiffs, however, did not obtain relief for over eight years. *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL 1290, No. 99-mc-276 (D.D.C. Feb. 6, 2008), ECF No. 947 (judgment entered for private plaintiffs).

private actions on separate schedules thus "[p]ermit[s] [the] federal suit[] to go forward without being burdened by delays that consolidation may cause," resulting in "more expeditious relief to the public," and "promot[ing] judicial efficiency by . . . fostering settlement" of the private actions.[42]  This is why the FTC has already staked out its position *against* consolidation in the M.D.N.C, writing in its opposition to the defendants' motion for an indefinite stay that "[c]onsolidation of [the] Government Plaintiffs' case with the private cases is contrary to public policy."[43]

## CONCLUSION

For the foregoing reasons, the First-Filer Group respectfully requests that the Court centralize the loyalty program actions in the Southern District of Indiana.

DATED: December 19, 2022                    Respectfully submitted,

                                                  */s/ John D. Radice*

                                            John Radice
                                            Natasha J. Fernández-Silber
                                            Rishi P. Raithatha
                                            Daniel Rubenstein
                                            Kenneth Walsh
                                            **RADICE LAW FIRM, PC**
                                            475 Wall Street
                                            Princeton, NJ 08540
                                            Telephone: (646) 245-8502
                                            Facsimile: (609) 385-0745
                                            jradice@radicelawfirm.com
                                            nsilber@radicelawfirm.com

---

[42] *United States v. Dentsply Int'l, Inc.*, 190 F.R.D. 140, 145 (D. Del. 1999) ("Permitting federal suits to go forward without being burdened by delays that consolidation may cause not only permits more expeditious relief to the public for conduct adjudged illegal, but also makes a judgment in favor of the Government available for use in a private suit. In addition to providing private antitrust plaintiffs with a powerful weapon, it also promotes judicial efficiency by fostering settlement.")).

[43] Pls.' Opp. to Defs.' Mot. for Extension of Time ("FTC Opp. Br."), *FTC, et al. v. Syngenta Crop Protection AG, et al.*, No. 22-828 (M.D.N.C. Dec. 2, 2022), ECF No. 59, at 10.

rraithatha@radicelawfirm.com
drubenstein@radicelawfirm.com
kwalsh@radicelawfirm.com

*Counsel for Plaintiff Justin W. Jenkins, S.D. Ind., No.*
*22-1976, and Plaintiffs KM Farms, Inc., Brett Turner,*
*John W. Jenkins, Otho Turner, and Rhett Turner, S.D.*
*Ind., No. 22-2420.*

R. Lyn Stevens
**STEVENS LAW FIRM**
1782 Mountain Springs
Canyon Lake, Texas 78133
Phone: (409) 880-9714
Lyn@Stevens.Law

*Counsel for Plaintiff Justin W. Jenkins, S.D. Ind., No.*
*22-1976, Plaintiff Leslie Turner, S.D. Ind., No. 22-*
*2411, Plaintiffs KM Farms, Inc., Brett Turner, John*
*W. Jenkins, Otho Turner, and Rhett Turner, S.D. Ind.,*
*No. 22-2420, and Plaintiffs Walter Psencik and*
*Travis Psencik, S.D. Ind., No. 22-2423.*

Shomik Ghosh
Michelle C. Clerkin
**SPIRO HARRISON & NELSON**
7 World Trade Center, 46th Floor
250 Greenwich Street
New York, NY 10007
Phone: (646) 880-8850
Fax: (973) 232-0887
sghosh@spiroharrison.com
mclerkin@spiroharrison.com

Jason C. Spiro
**SPIRO HARRISON & NELSON**
2 Bridge Avenue, Ste. 322
Red Bank, NJ 07701
Phone: (862) 341-4804
Fax: (973) 232-0887
jspiro@spiroharrison.com

David B. Harrison
Thomas M. Kenny
**SPIRO HARRISON & NELSON**
363 Bloomfield Avenue, Suite 2C
Montclair, NJ 07042
Phone: (973) 232-4109

Fax: (973) 232-0887
dharrison@spiroharrison.com
tkenny@spiroharrison.com

Danielle F. Moriber
**SPIRO HARRISON & NELSON**
1221 Brickell Avenue, Suite 900
Miami, FL 33131
Phone: (786) 841-1181
Fax: (973) 232-0887
dmoriber@spiroharrison.com

*Counsel for Plaintiff Leslie Turner, S.D. Ind., No. 22-2411.*

David E. Kovel
Nicole A. Veno
**KIRBY McINERNEY LLP**
250 Park Avenue, Suite 820
New York, York 10177
Telephone: (212) 371-6600
dkovel@kmllp.com
nveno@kmllp.com

*Counsel for Plaintiffs Walter Psencik and Travis Psencik, S.D. Ind., No. 22-2423.*

13